IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THE ORGANIC MEAT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CV585 |
| | ) | |
| v. | ) | |
| | ) | |
| J. F. O'NEILL PACKING COMPANY, INC., and PROTECTIVE INDUSTRIAL FLOORING, INC., | ) ) ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant J.F. O'Neill Packing Company, Inc.'s ("O'Neill") motion to dismiss, Filing No. 7. This is a breach of contract and negligence action arising from a slaughter and fabrication plant's alleged contamination of a customer's organic meat due to chemicals and odors emitted from the plant's new flooring. Jurisdiction is proper under 28 U.S.C. § 1332, permitting this court jurisdiction over citizens between two states where the amount in controversy exceeds $75,000.

Plaintiff The Organic Meat Company ("OMC"), a Wisconsin corporation that markets organically raised meat, contracted with O'Neill, a Nebraska corporation, to slaughter, process, and pack the meat at O'Neill's slaughter and fabrication plant in Omaha, Nebraska. OMC maintains that in the summer and fall of 2005, it shipped cattle to O'Neill to be slaughtered, processed, and packaged as organic meat ("Goods") for sale to third parties. According to their agreement, O'Neill agreed to return the Goods to OMC or OMC's designees. O'Neill was responsible for ensuring the merchantability and edibility of the finished Goods, so they could be sold for human consumption in accordance with the Goods' organic character.

After receiving the Goods from O'Neill, OMC and its customers reportedly discovered contamination of the Goods, as well as an offensive and unacceptable taste and odor. Consequently, the Goods could not be sold because they were "inedible, unpalatable and unfit for human consumption" and caused concern about the Goods' organic character. Filing No. 1. According to OMC, on September 27, 2005, O'Neill confirmed to OMC that contamination and adulteration of the Goods had occurred at its facilities. OMC issued an immediate voluntary withdrawal of the Goods and instructed its customers to dispose of Goods that remained in customers' possession.

OMC alleges contamination of OMC's Goods occurred at O'Neill's plant from toxic fumes and chemicals emanating from flooring installed at the plant. Subsequent testing by O'Neill confirmed the presence of unsuitable levels of benzyl alcohol and phenol from floor samples with a coating consisting of an epoxy system. These chemicals and odors reportedly permeated the Goods while the Goods were located and processed at O'Neill's plant, causing the Goods to develop a foul taste and offensive odor, rendering them inedible. OMC contends that at O'Neill's request, defendant Protective Industrial Flooring, Inc. ("Protective"), an Arkansas corporation, selected, provided, and installed the flooring at O'Neill's plant.

OMC maintains that prior to September 27, 2005, O'Neill was aware of, and knew or should have known of an unusual, offensive odor and fumes at its plant associated with the contamination. OMC alleges that prior to September 27, 2005, O'Neill received notice from customers regarding contamination and adulteration of meat at its plant and O'Neill confirmed that contamination had occurred. OMC contends that O'Neill did not notify OMC about any contamination prior to O'Neill's confirmation of the problem on September 27,

2

2005. OMC further alleges that OMC's injuries would be lessened if, at the time O'Neill discovered the odor, O'Neill had taken reasonable steps to investigate, isolate and remedy the problem, including informing OMC of the problem. OMC asserts that O'Neill subsequently removed and replaced the epoxy floor with urethane flooring, and conducted a sample and test to confirm that the problem no longer existed.

OMC brought suit in this court against O' Neill and Protective alleging breach of bailment contract by O'Neill (Claim I); breach of contract by O'Neill (Claim II); negligence by both O'Neill and Protective (Claim III); and strict liability in tort against Protective (Claim IV). OMC requests that the court award it monetary damages on Claims I, II, and IV, and money damages jointly and severally on Claim III, as well as attorney fees, costs, pre-judgment interest, and any other relief the court deems appropriate. O'Neill thereafter brought the motion to dismiss at issue, pursuant to Federal Rule of Civil Procedure 12(b)(1), requesting that the court dismiss OMC's action or stay the proceedings. Filing No. 7.

Protective filed a third-party complaint against Dur-A-Flex, Inc. ("Dur-A-Flex"), a Connecticut corporation, and Carlson Floor Coatings ("Carlson"), a sole proprietorship in Nebraska. Filing No. 14. In Protective's third-party complaint, Protective maintains that if OMC obtains a successful judgment against Protective, Protective is entitled to indemnification and/or contribution from Dur-A-Flex and Carlson because of their alleged wrongdoing.[1]

---

[1] Dur-A-Flex and Carlson's "alleged wrongdoing" is not specified in Protective's third-party complaint. Protective asserts that Dur-A-Flex is a flooring manufacturer and Carlson is a professional floor installer. O'Neill filed a suit against Protective, Dur-A-Flex, and Carlson in the District Court of Douglas County, Nebraska. Filing No. 12, Attachment 2. Companies Dakota Beef, LLC, and Mrs. Gooch's Natural Food Markets, Inc. also filed suit in the District Court of Douglas County, Nebraska, against O'Neill, Protective, Dur-

O'Neill filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) requesting that this court dismiss the action or stay all proceedings in accordance with the abstention doctrine. In support of its position, O'Neill relies on the *Colorado River* doctrine and the first-filed rule. O'Neill alleges that it filed suit in Nebraska state court seeking declaratory judgment regarding insurance coverage denials,[2] and therefore, O'Neill was "first to file." O'Neill maintains that it did not act in bad faith or "race to the courthouse" to preempt further litigation. O'Neill contends that its customers from Maine, Montana, Nebraska, South Dakota, Texas, Florida, Wisconsin, and Minnesota have brought suits addressing the same facts and subject matter raised in OMC's case. According to O'Neill, Nebraska state courts are addressing the same issues arising out of the same facts brought by OMC, and OMC will inevitably become a party to at least one of the pending Nebraska state court cases. O'Neill further maintains that discovery has been consolidated for all pending Nebraska state cases. O'Neill contends that in an effort to promote judicial efficiency and secure resolution of the claims at issue, this court should defer jurisdiction to the Nebraska state courts.

OMC resists O'Neill's motion to dismiss, and asserts that current parallel state and federal court proceedings do not exist. Rather, OMC argues that there are seven pending state court claims that relate to the subject matter of the case at bar, but involve different claims. OMC contends that two of the state court actions have been consolidated for

---

A-Flex, and Carlson. Filing No. 12, Attachments 5 & 8. In its motion to dismiss, O'Neill states that Protective used floor material manufactured by Dur-A-Flex, and subcontracted Carlson to provide floor installation services. Filing No. 8, ¶ 10.

[2]This action is captioned in the District Court of Douglas County, Nebraska, as *J.F. O'Neill Packing Co. v. Employers Mutual Casualty Co.* Filing No. 12, Attachment 3. O'Neill's declaratory judgment action allegedly concerns O'Neill's insurance coverage. Filing No. 8, ¶ ¶ 14, 19.

discovery purposes, those parties have agreed there will be no substantive consolidation, and O'Neill has not consolidated the state cases. According to OMC, OMC is not a party to any state court proceedings in which O'Neill is a defendant. OMC asserts that it is not currently a party to O'Neill's declaratory judgment proceeding in state court and that such a proceeding will not resolve OMC's tort claims against O'Neill.

OMC claims that the state court proceedings would not resolve OMC's damages issues because the pending actions do not address damage to OMC's meat. OMC argues that parallelism does not exist simply because O'Neill has been sued in state court by other plaintiffs asserting similar claims, making O'Neill the common defendant in both state and federal proceedings. Therefore, OMC maintains that because the state and federal lawsuits are not "parallel," the "first-filed" rule does not apply. If the rule did apply, OMC contends that the instant case would be first-filed involving these parties and these issues.

**DISCUSSION**

"[T]he pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (*quoting McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Federal courts have an "unflagging obligation" to exercise the jurisdiction given them, an obligation not obviated simply because of the potential for conflict or the existence of a pending state court action involving the same subject matter. *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops.*, 48 F.3d 294, 297 (8th Cir. 1995). Accordingly, the doctrine of abstention, "under which a District Court may decline to exercise or postpone the exercise of its jurisdiction," operates as an extraordinary and narrow exception to a federal court's obligation. *Colorado River Water Conservation Dist.*, 424 U.S. at 813.

5

Abstention is appropriate "only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Id.* Courts evaluate several factors, known as the *Colorado River* factors,[3] to determine whether exceptional circumstances necessitate abdication:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority--not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops.*, 48 F.3d 294, 297 (8th Cir. 1995). Application of the *Colorado River* factors requires case specific balancing, with the balance heavily weighted in favor of the exercise of jurisdiction to avoid piecemeal adjudication. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). Courts employ the *Colorado River* factors to ensure wise judicial administration, while remaining mindful of "conservation of judicial resources and comprehensive disposition of litigation." *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 927 (8th Cir. 2006) (*quoting Colorado River Water Conservation Dist.*, 424 U.S. at 817).

Prior to weighing the *Colorado River* factors, the court must determine whether parallel proceedings exist. *In re Burns & Wilcox*, 54 F.3d 475, 477 (8th Cir. 1995). Parallel proceedings exist "if substantially the same parties litigate substantially the same issues in different forums." *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002, 1006

---

[3]In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19 (1976), the Supreme Court set forth four factors for determining whether exceptional circumstances exist, and added two more factors in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23-27 (1983).

6

(8th Cir. 2006); *see also Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 208 (4th Cir. 2006) ("we have strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical").

In cases of concurrent jurisdiction, the first-filed rule applies, providing that "the first court in which jurisdiction attaches has priority to consider the case." *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990). However, "first-filed" is more of a factor than a rule. The order in which jurisdiction was obtained is a relevant factor in applying the abstention doctrine, but in the context of determining whether a federal court should defer to a pending suit in state court, such a factor is far less determinative due to the federal court's obligation to exercise its jurisdiction. *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002).

**ANALYSIS**

According to Exhibit 1 (Filing No. 12, Attachment 1), a listing of the seven pending cases all in the District Court of Douglas County, Nebraska, O'Neill is listed as party to each of the cases, Protective is listed in two cases, and Carlson and Dur-A-Flex are named as parties in three cases. The docket sheet for the declaratory judgment action involving insurance, Filing No. 12, Attachment 3, does not include OMC as a party to that action or evidence such joinder. Evaluating the facts in the light most favorable to the nonmoving party, as the court must do when faced with a motion to dismiss, the court accepts as true OMC's statement that it is not currently a party to the declaratory judgment action. The pending Nebraska state court actions and the federal suit at issue involve the same subject matter and O'Neill is a common party. However, in the Nebraska state actions, it is not clear whether the other plaintiffs' breach of contract and tort claims address the same

7

damage issues raised by OMC in the federal action at bar. Nor is it clear whether the Nebraska state court actions can adequately address defenses raised and the third party claims filed by Protective against Carlson and Dur-A-Flex. Accordingly, the court finds the Nebraska state court actions and the suit at issue are not parallel and the first-filed rule is not applicable. As the Nebraska suits and the case at bar are not parallel, abstention is not warranted and the *Colorado River* factors are not relevant. Thus, O'Neill's motion to dismiss is denied.

      O'Neill argues that if the court denies O'Neill's motion to dismiss, the court should alternatively stay the current proceeding until the Nebraska state court disposes of the pending actions. If the court were to grant the stay, the court would, in effect, conclude that parallel state-court litigation is an adequate vehicle for the complete and prompt resolution of the issues between the parties. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. Having determined that the federal and state proceedings are not parallel, and that current pending state actions are not capable of resolving the claims and defenses at issue in this court, O'Neill's alternative motion to stay the proceedings is denied.

      THEREFORE, IT IS ORDERED that defendant O'Neill's motion to dismiss or stay the federal action, Filing No. 7, is denied.

      DATED this 20th day of March, 2007.

                                    BY THE COURT:

                                    s/Joseph F. Bataillon
                                    Chief United States District Judge